IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VERONICA DENT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-2601-K |
| | § | |
| DENIS MCDONOUGH, SECRETARY, | § | |
| DEPARTMENT OF VETERANS | § | |
| AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Denis McDonough, Secretary, Department of Veterans Affairs' ("Defendant") Motion for Summary Judgment Under Rules 12 or 56 (Doc. No. 14), Brief in Support (Doc. No. 15), and Appendix in Support (Doc. No. 16) (together, the "Motion"). Plaintiff Veronica Dent filed a Response to Defendant's Motion for Summary Judgment (Doc. No. 28), Brief in Opposition (Doc. No. 29), and appendix in support (Doc. Nos. 30 & 51 (redacted)) (together, the "Response"). Defendant filed a Reply (Doc. No. 31) to the Response. Also before the Court is Plaintiff's Motion for Leave to File Amended Pleading (Doc. No. 37) and the proposed amended pleading (Doc. No. 37-1) (together, the "Motion to Amend"). Defendant filed a Response and Objections to Plaintiff's Motion for Leave, and Alternatively,

ORDER – PAGE 1

Motion for Leave to File Consolidated Response (Doc. No. 44).  Plaintiff did not file a reply.

The Court has carefully considered Defendant's Motion and Plaintiff's Motion to Amend, the respective responsive briefing, the evidence, the applicable law, and the relevant portions of the record.  Because Plaintiff's claims are untimely and she also failed to exhaust her administrative remedies as to either of the claims, Plaintiff's claims are barred and Defendant is entitled to summary judgment.  The Court **GRANTS** Defendant's Motion and **dismisses** Plaintiff's claims.  Because Plaintiff's proposed amendments to her complaint are futile, the Court **DENIES** Plaintiff's Motion to Amend.

## I.    Factual and Procedural Background

Citations herein to case-specific documents refer to the CM/ECF-assigned page number.  Plaintiff Veronica Dent ("Plaintiff") was employed by the Department of Veterans Affairs ("Defendant" or the "VA") at the VA's North Texas Health Care System (the "Dallas VA") and, at the time her employment ended, she was as a File Clerk in the Health Information Management Services division.  Doc. No. 30-1 at 1; *see also* Doc. No. 16-2 at 1.  On June 2, 2020, Saadia Sajjad, the Chief of Health Information Management Services, issued Plaintiff a notice of proposed removal based on four charges of disruptive conduct. Doc. No. 30-1 at 2; *see also* Doc. No. 16-2 at 17-

ORDER – PAGE 2

20.  Plaintiff believes each of those charges were "false or exaggerated".  Doc. No. 30-1 at 2.  Nevertheless, Dr. Stephen Holt, then-Director of the Dallas VA, found the charges were substantiated and he sustained Plaintiff's removal.  Doc. No. 30-1 at 3; Doc. No. 30-2 at 8-9.  Instead of terminating Plaintiff immediately, Dr. Holt offered her "a choice between being terminated or signing a last chance agreement" which would abate her removal.  Doc. No. 30-1 at 3; *see* Doc. No. 30-2 at 9, 18-20; *see also* Doc. No. 16-2 at 7-11.  Under the terms of the Last Chance Agreement (the "LCA"), the Dallas VA would rescind the removal decision if Plaintiff did not engage in any "misconduct" for a period of 2 years.  Doc. No. 30-2 at 18.  Plaintiff signed the LCA on July 28, 2020.  *Id.* at 20.

On March 9, 2021, Plaintiff was asked by Paulette Dickens, a Dallas VA staff member, to move her car from the place she had parked it.  Doc. No. 30-1 at 3.  While doing this, Plaintiff left the Dallas VA premises and went to the bank.  *Id.*  Plaintiff had not requested permission to leave before doing so, but she immediately notified Dickens on her return and asked to use personal leave for her absence which Dickens approved.  *Id.*  However, the next day, Plaintiff's supervisor, Cynthia Shelton, denied Plaintiff's leave request and Plaintiff was designated absent without leave ("AWOL") for the 1 ½ hours she was gone on March 9, 2021.  *Id.*; *see also* Doc. No. 16-2 at 6.

ORDER – PAGE 3

On July 6, 2021, Plaintiff was notified that she had violated the LCA and, as a result, she would be removed effective July 10, 2021.  Doc. No. 30-2 at 23; Doc. No. 16-2 at 6.  The AWOL incident on March 9, 2021, in addition to a warning Plaintiff had received on October 30, 2020, about AWOL violations amounted to misconduct warranting discipline and, thus, violated the terms of the LCA.  *Id.*  According to Plaintiff, Sajjad tod her that she waived her rights to challenge her termination when she signed the LCA.  Doc. No. 30-1 at 4.

Worried about removal affecting her retirement benefits and job prospects, Plaintiff decided to ask about resigning the next day.  *Id.* 4-5; *see* Doc. No. 30-2 at 29-35.  Plaintiff sent emails and communicated via messaging with some Dallas VA employees, but, "[b]ecause no one would speak to [her]" Plaintiff "gave up."  Doc. No. 30-1 at 5.  Although she asked about resigning, Plaintiff did not have the "present intent to resign" and never submitted a resignation letter through the online benefits portal because she did not know how use it.  *Id.*  Plaintiff continued to work through Friday, July 9, 2021, and, knowing her termination was effective July 10, 2021, she "turn[ed] in [her] Personal Identification Verification Card, and not a resignation letter, at the end of the day[.]"  *Id.*

On October 25, 2021, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor for the first time to make an informal complaint.  *Id.*; Doc. No. 30-

2 at 38; *see* Doc. No. 16-4 at 12-15.  Plaintiff, who was represented by counsel, made

two claims in her informal complaint related to (1) being terminated on September 24,

2021, and (2) being marked AWOL on March 9, 2021.   Doc. No. 16-4 at 12-15.

Plaintiff asserted that the VA took these actions because of her religion, disability, and

age.  *Id.* at 12 & 14.  As for the termination claim, Plaintiff advised the EEO counselor

that she "was informed" of her termination on July 9, 2021, but Sajjad "issued

termination papers" on September 24, 2021.  *Id.*   Plaintiff stated that she was

terminated for an "incident" that happened six months prior to her termination.  *Id.*

On her second claim, Plaintiff advised that she was "marked" AWOL when she moved

her car on March 9, 2021.  *Id.* at 12-13.  Plaintiff sought reinstatement, resignation in-

lieu of termination, demotion of Shelton and Sajjad, and $200,000 in compensatory

damages.  *Id.* at 16; *see also id.* at 19 & 29.  The EEO counselor closed Plaintiff's informal

complaint on November 18, 2021, and was Plaintiff provided Notice of Right to File a

Discrimination Complaint.  *Id.* at 20-25.

On November 22, 2021, Plaintiff filed a formal EEO complaint, represented by

the same counsel, making the following claim:

> I am filing a complaint because of wrongful termination. There was
> never any warning or indication of any wrongful or misconduct of
> work related behavior.  I was told I was doing good which goes
> according to my most recent performance appraisal.  I was notified
> 7-5-21 I was being terminated officially on 7/9/21 by Saadia.  The
> actual termination date occurred according to payroll 9/24/21.

ORDER – PAGE 5

*Id.* at 31.  Under "Date of Occurrence", Plaintiff wrote "7-5-21" and "10/24/21 spoke with payroll office".  *Id.*  The EEO investigator determined from the record that, effective July 9, 2021, Plaintiff had resigned in lieu of being terminated for violating the LCA.  *Id.* at 33-34.  The EEO Investigator further concluded that Plaintiff did not initiate contact with the EEO counselor until October 25, 2021, well past the 45-day time period, and her explanation for the delay was not sufficient to invoke waiver, estoppel, or equitable tolling.  *Id.* at 34-36.  Because of that, Plaintiff's formal EEO complaint was dismissed as untimely.  *Id.* at 36.  On August 23, 2022, this final decision was affirmed in an administrative appeal.  *Id.* at 1-3.

On November 18, 2022, Plaintiff filed this lawsuit against Defendant, asserting two claims under Title VII for religious discrimination based on disparate treatment and constructive discharge.  Defendant filed this Motion for Summary Judgment which is fully ripe.

## II.    Applicable Law and Legal Standards

### A.    Summary Judgment

Federal Rule of Civil Procedure 12(d) provides that where, "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  Defendant filed the instant motion as a motion for

summary judgment under Rule 12 and Rule 56, relying on and submitting evidence outside the pleadings in support.  Plaintiff had a reasonable opportunity to submit evidence outside the pleadings in support of her Response in opposition.  *See id.* ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  The Court has considered the evidence submitted by both parties in its determination of this Motion and, therefore, the Court applied the Rule 56 standard.

"Summary judgment is required when 'the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed.R.Civ.P. 56(a)).  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Even if there is a dispute regarding some material facts, a movant may obtain summary judgment if he can prove there is no evidence to support one or more essential elements of the non-

moving party's claim." *Walker v. Geithner*, 400 F. App'x 914, 916 (5th Cir. 2010)(per curium) (citing *Celotex*, 477 U.S. at 323-25).

Once the movant satisfies his burden, the nonmovant may not rest on the pleadings, but must present competent summary judgment evidence showing a genuine fact issue for trial exists. *Celotex*, 477 U.S. at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc) (nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence; not with "conclusory allegations, speculation, and unsubstantiated assertions."). If the nonmovant fails to meet this burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

B.      **Exhaustion of Administrative Remedies and Timeliness**

"Before a federal civil servant can sue his employer in court for discriminating against [her] in violation of Title VII, [s]he must first exhaust [her] administrative remedies." *Green v. Brennan*, 578 U.S. 547, 552-53 (2016) (citing 42 U.S.C. § 2000e-16(c)). Exhaustion of those remedies requires the federal employee to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." *Id.* (quoting 29 C.F.R. § 1614.105(a)(1)). If the employee fails to contact an EEO counselor within this 45-day window, the claims are time-barred. *Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). To be sure, this time limit is subject to waiver, estoppel, or equitable tolling, but those equitable defenses "are to be applied sparingly." *Morgan*, 536 U.S. 101, 113; *accord Teemac*, 298 F.2d at 457 ("Equitable tolling applies only in 'rare and exceptional circumstances.'"); *cf.* § 1614.105(a)(2) (the EEO Commission shall extend the 45-day time limit where the employee shows that she "was not notified of the time limits and was not otherwise aware of them," or that she "did not know and reasonably should not have known that the discriminatory matter or personnel action occurred," or for other reasons the Commission decides are sufficient.).

III.    Analysis

    A.    Defendant's Motion for Summary Judgment

In its Motion, Defendant argues that summary judgment must be granted because Plaintiff's claims are barred as untimely.  Even if the claims were not time-barred, Defendant asserts that Plaintiff failed to administratively exhaust both claims she asserts in this Court because her EEO complaints address only wrongful termination, not disparate treatment arising from religious discrimination or harassment sufficient to constitute constructive discharge.  Defendant argues that, regardless of her failure to exhaust administrative remedies, Plaintiff waived her right to challenge her termination under the LCA.

In her Response, Plaintiff maintains that she was terminated and did not resign, and she exhausted all administrative remedies prior to filing her claims in this Court. Plaintiff asserts that her initial EEO contact was timely but, even if it was not, the circumstances justify tolling the 45-day time period.  Plaintiff also argues that she "substantively" exhausted her administrative remedies because "a reasonable interpretation of her agency complaint allegations" would "encompass" and result in an agency investigation of her claims for religious discrimination and harassment and constructive discharge.  Finally, Plaintiff asserts that she did not knowingly or voluntarily waive her rights to challenge her termination under the LCA and,

additionally, her attendance issue in being charged AWOL is "questionable" as being

misconduct for purposes of violating the LCA.

### 1.      Termination v. Resignation

The Court notes at the outset that Plaintiff and Defendant disagree as to

whether Plaintiff was terminated for violating the LCA or whether she resigned instead.

Defendant asserts that Plaintiff resigned her position, effective July 9, 2021, which the

VA documented in its Notification of Personnel Action Standard Form 50.  *See, e.g.*,

Doc. No. 15 at 6 n.2, 8, 14 & 16 n.11; Doc. No. 16-1 at 3-4; Doc. No. 16-2 at 1.

Plaintiff, however, insists that she was terminated, and she expressly and repeatedly

disavows that she resigned.  *See, e.g.*, Doc. No. 29 at 1, 4, 6, 7, 8, 10, 11, 12, 13, 21 &

24; Doc. No. 30-1 at 5.

The Supreme Court recently affirmed that an employee's actual resignation is

an essential element of a constructive discharge claim. *Green v. Brennan*, 578 U.S. 547,

554 (2016).  The Supreme Court expressly held:

> A claim for constructive discharge therefore has two basic elements.
> A plaintiff must prove that [s]he was discriminated against by [her]
> employer to the point where a reasonable person in [her] position
> would have felt compelled to resign.  But [s]he must also show that
> [s]he actually resigned.  In other words, an employee cannot bring a
> constructive-discharge claim until [s]he is constructively *discharged*.

*Id.* at 555 (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)); *see also*

*Lemonia v. Westlake Mgmt. Servs., Inc.*, 2023 WL 6878915, at *8 (5th Cir. Oct. 18, 2023)

ORDER – PAGE 11

("Such a [constructive discharge] theory is actionable when an employee quits his job under circumstances that are treated as an involuntary termination of employment.").

Plaintiff's wrongful discharge claim is grounded on just the first factor, alleging only that the VA discriminated against her "by creating working conditions which were so intolerable that a reasonably employee would feel compelled to resign." Doc. No. 1 at 5. Resignation is unquestionably an essential element of this claim and Plaintiff maintains that she did not resign and presents evidence in support of this. The Court must view all evidence and reasonable inferences in the light most favorable to Plaintiff, the nonmovant, and resolve all disputed facts in favor of Plaintiff. *See Diebold, Inc.*, 369 U.S. at 655; *Boudreaux*, 402 F.3d at 540. Were the Court to resolve this factual issue in line with the termination theory that Plaintiff advances, Plaintiff's claim for constructive discharge would necessarily fail and Defendant would be entitled to summary judgment on this claim. Ultimately, however, this issue need not be decided because Plaintiff's constructive discharge claim (as well as her religious discrimination claim) fails on other grounds.

The Court will use "termination" in the remainder of the Court's analysis in this Memorandum Opinion for the sake of consistency and to prevent any confusion.

2.      **Exhaustion of Administrative Remedies**

a.      **Initial Contact with EEO Counselor**

1)      AWOL Incident

Plaintiff alleges the VA discriminated against her as to actions arising from an incident on March 9, 2021.  Doc. No. 1 at 3 & 5.  Plaintiff states she was asked to move her car on March 9, 2021, and, "[w]hile doing this, [she] went to the bank to address a problem regarding [her] bank card."  Doc. No. 30-1 at 6; *see also, e.g.*, Doc. No. 16-4 at 48 & 52.  "The following day", on March 10, 2021, Plaintiff's supervisor told her that she "could not use personal leave time" for her absence and her supervisor "designated the 1.5 hours [she] was gone as absent without leave (AWOL)."  Doc. No. 30-1 at 6.  Plaintiff states that "[t]his was unfair treatment".  *Id.* at 3.  Plaintiff identifies this single incident in her Complaint as an allegedly discrimination act.  Doc. No. 1 at 3 ("[T]he [AWOL] charge is pretext for discrimination.").

The law is clear that an employee must make initial contact with an EEO counselor within 45 days of the allegedly discriminatory action.  § 1614.105(a)(1).  "Failure to initiate timely contact means a claim is unexhausted and therefore cannot proceed in court."  *Alabbassi v. Whitley*, 2022 WL 101975, at *2 (5th Cir. Jan. 11, 2022); *see Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).   Plaintiff's own summary judgment evidence establishes that she learned on March 10, 2021, her supervisor

ORDER – PAGE 13

denied her leave request and she was being charged as AWOL for leaving the Dallas

VA premises on March 9, 2021.  Doc. No. 30-1 at 3.  Further, it appears Plaintiff knew

at the time "[t]his was unfair treatment because many employees leave the [Dallas VA]

facility without permission, and [are] not designated as AWOL", but her supervisor

"selectively enforces this policy."  *Id.*  Plaintiff even acknowledged in her informal EEO

counseling that "she is late filing" her claim about this incident "because she did not

know she needed to file within 45 days."  *See* Doc. No. 16-4 at 16.  The summary

judgment record clearly supports a finding that Plaintiff knew, or reasonably should

have known, on March 10, 2021, that the AWOL incident was allegedly discriminatory

in nature.  *See Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) ("[T]he

limitations period on an employment discrimination claim 'begins to run from the time

the complainant knows or reasonably should have known that the challenged act has

occurred.'") (internal citation omitted).

Plaintiff was required to initiate EEO counseling regarding this incident within

45 days of March 10, 2021, and she did not do so until October 25, 2021.  Doc. No.

29 at 8; *see also* Doc. No. 16-4 at 48 & 52.  In response to Defendant's Motion,

Plaintiff's argument that her initial agency contact was timely relates only to her claim

for termination and the effective date of that personnel action.  Doc. No. 29 at 13.

The law requires Plaintiff to initiate EEO counseling within 45 days of *each* alleged

ORDER – PAGE 14

discriminatory action, not simply after the most recent discriminatory act or after personnel action is taken. *See Coronado v. Wynne*, 544 F. Supp. 2d 548, 553-54 (W.D. Tex. 2008) (finding that each of the three discriminatory acts the plaintiff complained of were time-barred where the plaintiff failed to seek EEO counseling within 45 days of the date of each respective discriminatory act); *see also Alabbassi*, 2022 WL 101975, at *2 (plaintiff was required to contact EEOC counselor within 45-day window of each claim).

Because she did not contact an EEO counselor until well past the 45-day time period, Plaintiff's claim that this AWOL incident was a discriminatory act is time-barred and, therefore, unexhausted and cannot proceed in this Court. *See Alabbassi*, 2022 WL 101975, at *2; *see Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002); *O'Hara v. Donahoe*, 595 F. App'x 367, 370 (5th Cir. 2014).

2)      Termination

Plaintiff alleges her termination was discrimination because the VA "create[ed] working conditions which were so intolerable that a reasonably employee would feel compelled to resign." Doc. No. 1 at 5. In her Response, Plaintiff asserts the following argument that her claim is timely:

> [T]he summary judgment record does not establish on what precise date Plaintiff was terminated or when it became effective. Nonetheless, this date is shown to be no earlier than October 25,

> 2021.  As a result, Plaintiff's initial agency contact, made on the
> same day, was timely.

Doc. No. 29 at 13.  The summary judgment record belies Plaintiff's terse argument.

First, the summary judgment record, which includes Plaintiff's own sworn declaration,

unequivocally establishes that the "precise date" Plaintiff was notified of her

termination is July 6, 2021, and the "precise date" the termination was effective is July

10, 2021.  *See, e.g.*, Doc. No. 16-4 at 20, 29; Doc. No. 30-1 at 4; Doc. No. 30-2 at 10,

23.  Thus, the 45-day timeline for Plaintiff to initiate contact with an EEO counselor

began to run from July 10, 2021, and concluded on August 19, 2021.

§ 1614.105(a)(1); *see also Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992).  It is

undisputed that Plaintiff initially contacted the EEO counselor on October 25, 2021,

which is well outside the 45-day timeline.

Next, Plaintiff's assertion that her termination "is shown" to have occurred "no

earlier than October 25, 2021" is wrong.  The evidence Plaintiff submits in support of

this assertion is her own declaration and affidavit and a letter from the Texas

Workforce Commission (the "TWC").  *See generally* Doc. No. 30-1; Doc. No. 30-2 at

38 & 40.  First, Plaintiff contends that an unnamed supervisor/representative with the

VA Payroll Department ("Payroll") informed Plaintiff that her separation documents

were not received until September 24, 2021, and had not yet been processed on

October 25, 2021.  *See* Doc. No. 30-1 at 5; Doc. No. 30-2 at 38.  This unnamed Payroll

supervisor/representative also informed Plaintiff she "was still technically employed by the [VA]", Doc. No. 30-2 at 38, and told Plaintiff she "could actually file a complaint", Doc. No. 30-1 at 5.   Plaintiff's assertions about unnamed Payroll supervisor/representative are vague and unsubstantiated and, therefore, "do not adequately substitute for specific facts showing a genuine issue for trial." *Darnell v. Dep't of Justice*, 2023 WL 4712197, at *2 (S.D. Tex. June 16, 2023). Even so, Plaintiff cites no authority, and the Court could locate none, for Plaintiff's suggestion that a lag in processing her "termination paperwork" delayed triggering the 45-day clock. *See also Holmes v. Drug Enforcement Admin.*, 512 F. Supp. 2d 826, 837 (W.D. Tex. 2007) (concluding there is no legal basis for the plaintiff's "theory that a plaintiff must wait for . . . any such document titled "official personnel action" to trigger the running of the 45-day period."). The Fifth Circuit in fact has previously rejected an employee's argument that his employer's delay in filing the transfer paperwork paused the limitations period for him to file a discrimination charge. *Ramirez*, 312 F.3d at 182. The Fifth Circuit held that the employee's discrimination charge was untimely because he was on notice about the transfer when he was informed about it and, at the latest, he was on notice when he was actually transferred. *Id.*

Here, it is undisputed that Plaintiff turned in her Personal Identification Verification Card at the end of the day on July 9, 2021, the last day she worked at the

Dallas VA.  Doc. No. 30-1 at 5.  Plaintiff makes no argument, and certainly does not present any evidence showing, that she continued to work at the Dallas VA or was compensated by the VA for any work performed after July 9, 2021.  Even if the Court were to consider it is competent summary judgment evidence, the Payroll supervisor/representative's statement that Plaintiff "was still technically employed" as of October 25, 2021, does not overcome the summary judgment evidence establishing that Plaintiff's termination was indeed effective July 10, 2021, at the latest.  *See* Doc. No. 16-4 at 31 ("I was being terminated officially on 7/9/21.").

Plaintiff also cites to the TWC letter as evidence that she was still employed by the VA as late as October 21, 2021.  Specifically, Plaintiff asserts that her application for unemployment benefits was denied by the TWC because she "was still employed by [her] employer, the [VA]."  Doc. No. 30-2 at 38; *see* Doc. No. 30-1 at 5; *see also* Doc. No. 29 at 8.  However, the TWC letter Plaintiff submitted in her summary judgment evidence does not substantiate this statement.  The TWC letter actually establishes the exact opposite of Plaintiff's assertion as it states, "We *can* pay your benefits," because "[o]ur investigation found that your employer fired you for a reason that was not misconduct associated with the work."  Doc. No. 30-2 at 40 (emphasis added).  This is not evidence that Plaintiff's termination was effective "no earlier than October 25, 2021".

Plaintiff presents no evidence refuting, or even raising a genuine fact issue as to, the effective date of her termination, which triggered the 45-day clock to initiate contact an EEO counselor. Thus, even taking the evidence and reasonable inferences in the light most favorable to Plaintiff, the summary judgment record is replete with evidence showing that Plaintiff was notified on July 6, 2021, she was terminated effective July 10, 2021, thereby triggering the 45-day deadline. *See* § 1614.105(a)(1); *see also Ramirez*, 312 F.3d at 182.

Plaintiff's assertion that there are "contrary argument[s]" regarding the timeliness of her initial contact does not satisfy her burden to come forward with specific facts showing a genuine issue of material fact. *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022); *see* Doc. No. 29 at 13. The Court concludes that Plaintiff failed to timely initiate contact with an EEO counselor within 45 days of July 10, 2021, the effective date of her termination. Because her termination claim is untimely, Plaintiff's claim that her termination was a discriminatory act is time-barred and, therefore, unexhausted and cannot proceed in this Court. *Alabbassi*, 2022 WL 101975, at *2; *see Teemac*, 298 F.3d at 454; *O'Hara v. Donahoe*, 595 F. App'x 367, 370 (5th Cir. 2014).

ORDER – PAGE 19

### b.      Tolling of the 45-Day Period

Although these claims are time-barred, the Court's inquiry does not end  because Plaintiff can circumvent the time-bar upon showing waiver, estoppel, or equitable tolling apply.  *Teemac*, 298 F.3d at 454; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  The VA determined that Plaintiff was not entitled to tolling or waiver, *see* Doc. No. 16-4 at 36, but this Court makes an independent determination.  *Teemac*, 298 F.3d at 455.  Plaintiff claims there is "[a]mple evidence demonstrate[ing] extenuating circumstances" which justify tolling the 45-day time period.  Doc. No. 29 at 14; *id.* at 15 (raising tolling only as to her termination claim).

"Equitable tolling applies only in 'rare and exceptional circumstances.'" *Teemac*, 298 F.3d at 457; *see Morgan*, 536 U.S. at 113 (courts should apply the doctrines of waiver, estoppel, and equitable tolling "sparingly.").  Equitable tolling is most often granted "where 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights'" *Teemac*, 298 F.3d at 457 (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)).  "When a plaintiff seeks equitable tolling due to the defendant's intentional concealment of material facts, he or she must show both (1) concealment by the defendant, and (2) that the plaintiff failed, despite the exercise of due diligence, to discover the relevant facts that form the basis of his claim."  *Roe*, 839 F. App'x at 843.

Courts, however, "have been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (quoting *Irwin*, 498 U.S. at 96).

In her Response, Plaintiff contends "she was not told of a 45-day deadline to file a complaint related to her termination." Doc. No. 29 at 14. Plaintiff cites no evidence, including to her own declaration, substantiating this claim that she did not receive any notification. Section 1614.105(a)(2) requires an extension of the 45-day time period if the employee shows she was neither "notified" nor "otherwise aware" of the time period to seek informal counseling. § 1614.105(a)(2). The Fifth Circuit has held that an employer "[p]roviding adequate notification to employees *generally* is sufficient" to satisfy the regulation's requirement. *Teemac*, 298 F.3d at 456 (emphasis added); *see* § 1614.105(a)(2). Defendant submitted the sworn declaration of Deatra Childress, EEO Manager of the Dallas VA to prove Dallas VA employees generally were provided adequate notification of the EEO counseling requirement. Doc. No. 16-4 at 32. Ms. Childress states that, at three separate EEO-trainings (in 2018, 2019, and 2020), Plaintiff was provided information about the requirement to initiate contact with an EEO counselor within 45 days of an alleged discriminatory event. *Id.* Ms. Childress also states that EEO-related postings providing notice of the 45-day time period are

ORDER – PAGE 21

posted in multiple areas of the Dallas VA where Plaintiff worked—the EEO bulletin board in the basement hallway leading to the cafeteria in building 2, the first floor hallway bulletin board in building 1, and in all patient care areas on official bulletin boards throughout the Medical Center. *Id.* Interestingly, Plaintiff does not argue that she did not receive notification in these three EEO-related trainings or that she did not see any of these informational posters at the Dallas VA facility. Even if she had, that argument would be unavailing. *O'Hara v. Donahoe*, 595 F. App'x 367, 371 (5th Cir. 2014) ("While O'Hara may have subjective reasons for failing to notice the informational posters, the placement of informational posters in areas accessible to O'Hara satisfied USPS's duty."). In addition to the EEO-trainings and the EEO-related postings, the summary judgment record also shows that Plaintiff "filed three prior EEO complaints" which, according the EEO Investigator, "is by default a showing of prior actual awareness of EEO complaint processing timeframes." Doc. No. 16-4 at 36. The Court finds Plaintiff was adequately notified of the regulation's requirement to initiate contact with an EEO counselor within 45-day period of a discriminatory act or adverse employment action. *See O'Hara*, 595 F. App'x at 370-71 (holding that a female employee was adequately notified of the informal counseling requirement and 45-day time period where the federal employer placed informational posters which publicized this information near the break room, men's restroom, time clocks, and front window).

ORDER – PAGE 22

Plaintiff argues that "Defendant does not controvert the fact or allege it did in fact inform Plaintiff of the deadline," simply suggesting instead that "it is possible" Plaintiff "was exposed" to this notification over the years.  Again, the Fifth Circuit does not demand the employer demonstrate actual notice.  *See Teemac*, 298 F.3d at 456.  The Fifth Circuit also does not require the employer to establish that the employee understood the notification.  *Id.*; *see Robertson v. Potter*, Civ. Action No. 3:10-CV-1424-N(BF), 2011 WL 3511017, at *3 (N.D. Tex. June 20, 2011)(Stickney, MJ).

The Court finds that an extension of time was not required under § 1614.105(a)(2).  Defendant's placement of its EEO postings in various locations in the Dallas VA facility where Plaintiff worked, in addition to the information she received in her EEO-trainings in 2018, 2019, and 2020, provided adequate notification of the 45-day deadline.  *See Harris v. Gonzales*, 488 F.3d 442, 445 (D.C. Cir. 2007) (citing *Teemac* in approval for its adequate notification approach, the court remarked that "it cannot be that an employee claiming to have been unaware of the 45-day time limit would be automatically entitled to an extension even though the agency, through posters, employee handbooks, orientation sessions, etc., made conscientious efforts to advise its employees of the time limit.").

Plaintiff also contends that she was "directly and specifically advised" that she waived her right to challenge her termination, so she was "prevented by circumstances

beyond her control" from initiating contact with an EEO counselor within 45-days of being terminated. The Court is unpersuaded by this argument. Without addressing the validity of it, the Court notes that the LCA clearly states that Plaintiff does not "prospectively waiv[e] the right to file a complaint of discrimination concerning future events". Doc. No. 16-2 at 23, *See Lovett v. Barbour Int'l, Inc.*, 211 F. App'x 281 (5th Cir. 2006) (district court did not abuse its discretion in refusing to toll the plaintiff's filing period for discrimination claim where "generic language in the termination agreement does not indicate that Barbour *actively misled* Lovett about his claims[.]"); *id.* at 281 n.1 ("Employees' ignorance of the law, even when stemming from illiteracy, cannot justify tolling."). The summary judgment evidence also demonstrates that Plaintiff was aware or knew at the time of her termination that she was allegedly being discriminated against by the VA. *See, e.g.*, Doc. No. 30-1 at 4. The Court has already concluded that the effective date of Plaintiff's termination was July 10, 2021, which triggered the 45-day time period to initiate contact. Plaintiff presents no evidence showing that she learned at some later date she had a *claim* for alleged discrimination. The summary judgment record shows that Plaintiff knew exactly why she was being terminated (the AWOL incident in March 2021) on July 6, 2021, and that AWOL incident itself was allegedly a discriminatory act. Plaintiff presents no summary judgment evidence establishing or creating a genuine issue of material fact that

Defendant concealed facts from or affirmatively mislead Plaintiff about the reason for her termination.  *See Ramirez*, 312 F.3d at 183-84; *Teemac*, 298 F.3d at 457; *Rivers v. Geithner*, 548 F. App'x 1013, 1018 (5th Cir, 2013).

The Court is likewise not persuaded by Plaintiff's argument that tolling is justified because, at the time she made initially contacted the EEO counselor, Plaintiff was still employed by the VA.  The Court has already found that neither the TWC letter nor Plaintiff's vague and unsubstantiated allegations of the Payroll supervisor's statements create a genuine issue of material fact.  *See Darnell*, 2023 WL 4712197, at *2.  Further, Defendant demonstrates that Plaintiff did not continue to work at the Dallas VA after July 9, 2021, and she did not receive a paycheck for any work past that date. *See* Doc. No. 16-1 at 4.  Plaintiff presents no evidence to the contrary.

The Court finds that Plaintiff was not entitled to an extension of time under § 1614.105(a)(2) because she was adequately notified of the 45-day deadline.  The Court further finds that Plaintiff did not demonstrate that Defendant concealed facts from her or actively mislead her about whether she had a claim for alleged discrimination; therefore, the Court declines to apply equitable estoppel or tolling.  *See Teemac*, 298 F.3d at 457 ("The party who invokes equitable tolling bears the burden of proof.").  Accordingly, the Court concludes that Plaintiff's claims for religious discrimination claim and constructive discharge are barred as untimely. *See id.* at 454

(plaintiff failed to initiate contact with EEO counselor within 45 days of barred, so untimely claim was barred from being filed in federal court).

### c.      Failure to Exhaust Administrative Remedies

Even if the Court were to conclude that the claims were timely or that tolling was justified, the Court would still grant summary judgment in favor of Defendant because Plaintiff's claims exceed the scope of her EEO charges and, therefore, were not exhausted in that administrative process.

In her informal EEO charge, Plaintiff made two claims for (1) "Termination" and (2) "Time and Attendance" and Plaintiff asserted that the VA took these actions because of her religion, disability, and age. Doc. No. 16-4 at 12-15. As for the first claim, Plaintiff advised the EEO counselor that she was terminated for an "incident" that happened six months earlier, and she "was informed" of her termination on July 9, 2021, but the "termination papers" were "issued" on September 24, 2021. *Id.* at 12. On her second claim, Plaintiff advised that she was "marked" AWOL when she moved her car on March 9, 2021. *Id.* at 12-13. In her formal EEO charge, Plaintiff wrote the following narrative:

> I am filing a complaint because of wrongful termination. There was never any warning or indication of any wrongful or misconduct of work related behavior. I was told I was doing good which goes according to my most recent performance appraisal. I was notified 7-5-21 I was being terminated officially on 7/9/21 by Saadia. The actual termination date occurred according to pay roll 9/24/21.

ORDER – PAGE 26

Doc. No. 16-4 at 31. At some point thereafter, Plaintiff made a correction to the claim:

> On 7/5/21 Saadia Sajjad (chief of HIMS) issued me a termination notice because of an incident that happened 4 months ago back on 3/9/21. I was informed (10/24/2021) I had until 7/9/21 to officially vacant [sic] the workplace but was informed by payroll that I was not officially terminated until 9/24/21 by Cynthia Shelton (Supervisor, HIMS).

*Id.* at 33.  It appears there is no further narrative with this charge.  *See Miller v. Sw. Bell Tel. Co.*, 52 F. App'x 928, at *7 n.7 (5th Cir. 2002) ("Worth noting is that there was no continuation sheet for this narrative filed, nor a supplemental document of any kind in the trial record.").  Plaintiff did not list any basis for the alleged discrimination in her formal EEO charge.  *Id.* at 31.

Defendant argues that, besides the claims being untimely, Plaintiff failed to administratively exhaust her claims because they are not within the scope of an EEO investigation of her informal or formal EEO charges.  Plaintiff responds that she "substantively" exhausted her administrative remedies because her "allegations, referencing a time and attendance policy and questionable individual treatment, all based on multiple types of discrimination, clearly implicate, and logically relate to issues of disparate treatment and harassment, even disparate impact, such that the claims may have been expected to arise in the course of the investigation."  Doc. No. 29 at 18-19.

ORDER – PAGE 27

It is well-established that an employee's lawsuit filed in federal court "may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable EEOC investigation of that charge." *Parker v. Benteler Steel Tube Mfg. Corp.*, 815 F. App'x 760, 762 (5th Cir. 2020)) (quoting *Nat'l Ass's of Gov't Emps. v. City Pub. Servs. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994)). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). The Fifth Circuit has explained that it "does not require a 'plaintiff to check a certain box or recite a specific incantation to exhaust', and will not 'cut off a party's rights merely because she fails to articulate correctly the legal conclusion emanating from her factual allegations.'" *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) (cleaned up) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) then *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970)). But the Fifth Circuit has repeatedly made clear "that the crucial element of a charge of discrimination is the factual statement contained therein." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 (5th Cir. 2019) (quoting *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)); *accord Sanchez*, 431 F.2d at 463 ("[T]he only absolutely essential element of a timely charge of discrimination is the allegation of fact contained therein."). A court

may grant summary judgment for failure to exhaust when the plaintiff fails "to fill in the appropriate box in the filed charge" "coupled with the inability to describe the general nature of the claim in the narrative section of the charge." *Williams*, 717 F. App'x at 445 (internal quotations omitted) (quoting *Miller*, 51 F. App'x at *7).

Here, although her formal EEO charge is silent as to the reasons, Plaintiff's informal EEO charge lists her religion, disability, and age as the reasons for the Dallas VA's actions.  Doc. No. 16-4 at 12 & 14.  But Plaintiff omitted "the crucial element" in both EEO charges, that being any factual statement which articulates discriminatory conduct or harassing behavior by the VA.  There are simply no factual allegations which would trigger an investigation into or encompass claims for religious discrimination based on disparate treatment or constructive discharge, which are the claims she filed in this Court.  *See Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014) ("[T[he court asks whether the charge 'stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges.'") (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)); *see also Melgar*, 931 F.3d at 379 ("The charge should allege that the employer engaged in an unlawful employment practice.").

As for religious discrimination, Plaintiff makes broad-sweeping, conclusory statements that her allegations "clearly implicate" and "logically relate" to claims for

disparate treatment based on religious discrimination.   But Plaintiff does not cite to any specific allegations or otherwise explain how this is so.  In both her informal and formal EEO charges, Plaintiff alleges a single incident in which she was designated AWOL because her supervisor denied her leave request when she left the Dallas VA facility without prior authorization.   Plaintiff makes no reference in her factual statements to her religion or how this incident was religious discrimination and, even reading her EEO charges "somewhat broadly", she makes no allegations which could be construed as implicating her religion or religious discrimination.  *See Lacy v. Dallas Football Club*, 2012 WL 2795979, at *5 (plaintiff's religious discrimination claim was barred because he "never mention[ed] religion, let alone allege religious discrimination" in his EEOC documents); *see also Pacheco*, 448 F.3d at 791 (court must construe charges "somewhat broadly" in making "a fact-specific inquiry into what [EEO] investigations it can reasonably be expected to trigger".).  The question "the court asks [is] whether the charge 'stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges.'" *Vicknair*, 555 F. App'x 325 at 332; *see Williams*, 717 F. App'x at 445 (The factual narrative must "describe the general nature of the claim in the narrative section of the charge.").  Here, the Court must answer no to that question.

The Court finds that a religious discrimination claim could not be expected to grow out of Plaintiff's EEO charges and, because she did not exhaust her administrative remedies, Plaintiff cannot bring the claim in this Court in the first instance. *See Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 712 (5th Cir. 1994) (claims filed in federal court under Title VII "may encompass any kind of discrimination like or related to allegations contained in the [EEO] charge and growing out of such allegation *during the pendency of the case before the Commission*.") (quoting *Sanchez*, 431 F.2d at 466) (internal quotations omitted); *see also Pacheco*, 448 F.3d at 791-92 (reading the plaintiff's EEO charge "somewhat broadly" in making "a fact-specific inquiry into what [EEO] investigations it can reasonably be expected to trigger", the court concluded a disparate impact investigation could not have reasonably been expected to grow out of the EEO charge where "it facially alleged disparate treatment" and "identified no neutral employment policy" and past incidents referenced involved disparate treatment only); *Grace v. Bank of Am.*, Civ. Action No. 3:03-CV-1294-D, 2003 WL 23095993, at *3 (N.D. Tex. Dec. 23, 2003)(Fitzwater, J.) (plaintiff's disparate impact claim was not administratively exhausted because her EEOC charge said nothing about disparate impact).

The Court now turns to Plaintiff's constructive discharge claim. "Constructive discharge requires a greater degree of harassment than that required by a hostile work

environment." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 925 (5th Cir. 2022) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).  Indeed, the Fifth Circuit explicitly held that "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Bye*, 49 F.4th at 925 (quoting *Brown*, 237 F.3d at 266); *accord Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (to establish a constructive discharge claim, plaintiff "must present 'something more' than what is required to establish a harassment or hostile work environment claim.").  In her informal and formal EEO charges, Plaintiff complains that she was terminated for an incident that happened months prior, Doc. No. 16-4 at 12, and she was never given a warning or otherwise notified of any work-related misconduct, Doc. No. 16-4 at 31.  Plaintiff's factual statements do not describe any conduct or actions which could even be construed as harassment or discrimination related to her termination, let alone any facts describing a greater level of harassing behavior or discrimination along with aggravating factors.  *See Harvill v. Westward Commc'ns, LLC*, 311 F. Supp. 2d 573, 585 (E.D. Tex. 2004) (plaintiff was precluded from bringing constructive discharge claim where EEOC charge included only harassment allegations).  Plaintiff merely complains that she not given notice or warning about her conduct prior to being terminated for it.  *See* Doc. No. 16-4 at 12, 16 & 31.

ORDER – PAGE 32

The Court finds that a constructive discharge claim could not reasonably be expected to grow out of Plaintiff's EEO charges and, because she did not exhaust her administrative remedies, Plaintiff cannot bring the claim in this Court in the first instance. *See Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712 (claims filed in federal court under Title VII "may encompass any kind of discrimination like or related to allegations contained in the [EEO] charge and growing out of such allegation *during the pendency of the case before the Commission*.") (quoting *Sanchez*, 431 F.2d at 466) (internal quotations omitted).

The Court has construed Plaintiff's EEO charges "somewhat broadly" in making "a fact-specific inquiry into what [EEO] investigations it can reasonably be expected to trigger". *Pacheco*, 448 F.3d at 791-92. For the foregoing reasons, the Court cannot conclude that an EEO investigation into claims for religious discrimination or constructive discharge could reasonably have grown out of Plaintiff's EEO charges. *See Vicknair*, 555 F. App'x at 332; *Miller*, 51 F. App'x at *7 ("The information, or lack thereof, included on Miller's filed EEOC charge creates a strong presumption in favor of a finding of failure to exhaust administrative remedies."). Because she failed to exhaust these claims in the administrative process, Plaintiff is barred from asserting them in federal court and Defendant is entitled to summary judgment. *See Williams*, 717 F. App'x at 445.

ORDER – PAGE 33

####     d.     Conclusion

Plaintiff urges the Court not to "circumscribe, limit, or restrict her claims in the current stage of the litigation before she had the opportunity to present them, well within the timeframe to do so, especially before discovery has begun" because this "would be highly prejudicial, inequitable, and arguably unjust."  Doc. No. 29 at 20. But this argument ignores "a primary purpose of Title VII" which "is to trigger the investigatory and conciliatory procedures of the [EEO], in [sic] attempt to achieve non-judicial resolution of employment discrimination claims."  *Pacheco*, 448 F.3d at 788. To be sure, "a *less* exacting rule would also circumvent the statutory scheme since Title VII clearly contemplates that no issue will be the subject of a civil action until the [EEO] has first had the opportunity to attempt to obtain voluntary compliance."  *Id.* (quoting *Sanchez*, 431 F.2d at 463).  The Court acknowledges that it has discretion to deny a summary judgment motion as premature before discovery has occurred.  *Fletcher v. United States Postal Serv.*, 2024 WL 363330, at *8 (E.D. La. Jan. 31, 2024) (citing *Sewell v. Sewerage & Water Bd. of New Orleans*, 697 F. App'x 288, 291 (5th Cir. 2017)); *see* Fed. R. Civ. P. 56(d).  Here, however, Plaintiff did not need fact discovery to oppose Defendant's Motion because the exhaustion arguments are purely legal ones.  *Fletcher*, 2024 WL 363330, at *8.

ORDER – PAGE 34

The Court concludes that Plaintiff's initial contact with the EEO counselor was untimely as to both the AWOL incident and her termination and because Plaintiff did not demonstrate tolling applied, her claims that these actions were discriminatory are time-barred.   Alternatively, Plaintiff failed to exhaust her claims for religious discrimination and constructive discharge in the administrative process because both claims fall outside the scope of her EEO charges.  For all these reasons, Plaintiff's claims are barred for failure to exhaust her administrative remedies and Defendant is entitled to summary judgment on Plaintiff's claims.

### B.    Motion to Amend Complaint

Also before the Court is Plaintiff's Motion for Leave to File Amended Pleading (the "Motion to Amend") (Doc. No. 37).  In her proposed amended complaint, Plaintiff seeks to assert three new claims against three new defendants, Jennifer Foster, Dr. Stephen Holt, and Saadia Sajjad (together, the "Individual Defendants"), who are all VA employees. *See* Doc. No. 37-1 at 2.  The deadlines under the Court's Scheduling Order to join parties and to amend pleadings ran on September 15, 2023, almost two weeks prior to Plaintiff filing her Motion to Amend.

It is well-established in the Fifth Circuit that "Rule 16(b) [of the Federal Rules of Civil Procedure] governs amendment of pleadings after a scheduling order deadline has expired."  *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536

(5th Cir. 2003); *accord Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 734-35 (5th Cir. 2018).  Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."  *S&W Enters.*, 315 F.3d at 536.

Under Rule 16(b)'s good cause standard, Plaintiff is required to show that, despite her diligence, the Scheduling Order deadlines to amend and join parties could not reasonably be met.  *Olivarez*, 997 F.3d at 602.  Plaintiff did not make the required showing because she failed to address this good cause standard entirely.  *See* Doc. No. 37 at 1-2 (addressing only Rule 15(a) standard).  The Court will not modify the scheduling order deadlines to permit the proposed amended complaint without Plaintiff's demonstration of good cause.  *See S&W Enters.*, 315 F.3d at 536.

Even if Plaintiff had satisfied the Rule 16(b) standard, the Court would still deny Plaintiff leave to amend under the more lenient Rule 15(a) standard.  Rule 15(a) provides that a district "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Although this language "evinces a bias in favor of granting leave to amend", "leave to amend is by no means automatic."  *Jones v. Robinson Prop. Grp.,*

*L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations and citations omitted); *accord Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 391 (5th Cir. 2017). The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment.'" *Body by Cook*, 869 F.3d at 391 (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).  The court does not abuse its discretion in denying a motion to amend if the amendment would be futile. *Marucci*, 751 F.3d at 378.  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.*; *accord Mandujano v. City of Pharr*, 786 F. App'x 434, 438 (5th Cir. 2019).

In her proposed amended complaint, Plaintiff asserts claims against the Individual Defendants (as federal actors) for violating her constitutional rights under the First and Fourteenth Amendments and she seeks monetary damages. *See generally* Doc. No. 37-1.  In *Bivens v. Six Unknown Named Agents for Federal Bureau of Narcotics*, the Supreme Court first recognized an implied cause of action to recover monetary damages against a federal actor to remedy a violation of the individual's constitutional rights.  403 U.S. 388 (1971) (Fourth Amendment violation); *see Annappareddy v. Pascale*, 996 F.3d 120, 133 (4th Cir. 2021) (to assert a cause of action against a federal

actor for monetary damages, that remedy "must come in the form of the implied cause of action first recognized in *Bivens*, allowing suits for damages against federal officers alleged to have violated a citizen's rights under the Constitution.") (internal quotations and citation omitted).  The Supreme Court has extended *Bivens* only two other times in recognizing implied causes of action:  "a Fifth Amendment equal protection claim for employment discrimination by a congressman, and an Eighth Amendment claim for inadequate medical care by federal jailers." *Cantu v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (citing *Davis v. Passman*, 442 U.S. 228 (1979) then *Carlson v. Green*, 446 U.S. 14 (1980)).

Since the *Carlson* decision in 1980, the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abassi*, 582 U.S. 120, 135 (2017) (citing *Iqbal*, 556 U.S. at 675).  Indeed, "for the past 30 years", the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) and collecting cases).  "When a party seeks to assert an implied cause of action under the Constitution itself," the court must ask "who should decide whether to provide for a damages remedy, Congress or the courts? The answer will most often be Congress." *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983) (internal quotations omitted); *see Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("At bottom, creating

a cause of action is a legislative endeavor."). Courts should exercise "'caution' before 'extending *Bivens* remedies into any new context.'" *Id.* (quoting *Malesko*, 534 U.S. at 74). "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Egbert*, 596 U.S. at 492 (citing *Ziglar*, 582 U.S. at 135-36).

In her Motion to Amend, Plaintiff very briefly addresses Defendant's position regarding these *Bivens* claims (based on conferring about the Motion to Amend). Doc. No. 37 at 4. Plaintiff contends that these claims are "separate and distinct" from the underlying employment claims and, citing no legal authority, argues that whether these claims are barred "is an issue for the court's determination following amendment, and in all respects is an unreasonable argument based on the Bivens jurisprudence." *Id.* at 4-5. Defendant responds that Plaintiff's proposed amendment adding the Individual Defendants and the claims against them is futile and, therefore, should be denied. Specifically, Defendant contends that there is no remedy available on these facts for Plaintiff's constitutional claims against the Individual Defendants under *Bivens*. Doc. No. 44 at 7-16. Plaintiff did not file a reply. The Court agrees that these constitutional claims are futile and amendment would not be permitted under Rule 15(a).

In her proposed amended complaint, Plaintiff asserts claims against the Individual Defendants for violating her procedural and substantive due process rights

under the Fourteenth Amendment.  Doc. No. 37-1 at 14-15.  Plaintiff alleges the Individual Defendants, "acting under color of federal law", violated Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.  *Id.* "The Fourteenth Amendment, by definition, requires state action." *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998) (citing U.S CONST. amend. XIV).  Plaintiff alleges that she is suing each of the Individual Defendants, who are VA employees, because of their actions as federal employees and actors.  Doc. No. 37-1 at 3-6.  As a matter of law, Plaintiff cannot maintain Fourteenth Amendment due process claims against these federal actors. *See McGuire*, 137 F.3d at 323.  Because Plaintiff's due process claims would be dismissed, amendment is futile and leave to amend denied.  *See Daughtry v. Englade*, 2023 WL 7386702, at *19 (E.D. Tex. Oct. 17, 2023) (finding the plaintiff's Fourteenth Amendment claims must be dismissed because the defendants were federal, not state, actors).

Plaintiff's proposed amended complaint also includes a claim against the Individual Defendants for violating Plaintiff's First Amendment right to free speech. Plaintiff alleges that the Individual Defendants implemented the LCA "in response" to Plaintiff's "requests for accommodations, and repeated complaints and reports of mistreatment, harassment, and abuse, with the intent and for the purpose of chilling Plaintiff's speech in this regard."  Doc. No. 37-1 at 7.  The Supreme Court recently

addressed First Amendment retaliation in the context of *Bivens*. *Egbert*, 596 U.S. at 498. Identifying the "substantial social costs" implicated in "[r]ecognizing any new *Bivens* action", especially one subjecting a federal employee to personal liability under the First Amendment, the Supreme Court concluded that "'Congress is in a better position to decide whether or not the public interest would be served' by imposing a damages action." *Id.* at 499 (quoting *Bush*, 462 U.S. at 389). The Supreme Court expressly held "that there is no *Bivens* action for First Amendment retaliation." *Id.* Based on this binding precedent, the Court finds that Plaintiff's First Amendment retaliation claim would be subject to dismissal. *See also Watkins v. Food Serv. Staff Members*, 2022 WL 17546292, *1 (5th Cir. Dec. 9, 2022) (citing *Egbert*, the court held that Watkins's *Bivens* cause of action for First Amendment retaliation was properly dismissed because Watkins failed to state a claim on which relief could be granted). For this reason, Plaintiff's proposed amendment as to her First Amendment claim is futile.

Plaintiff fails to satisfy the required good cause standard demanded under Rule 16(b) for amending to join these Individual Defendants and add these claims after the Scheduling Order deadlines expired. Even under the Rule 15(a) standard, Plaintiff's proposed amendments are futile and would be dismissed. *See Williams v. United States*, 2022 WL 211251, at *1-2 (E.D. Tex. Jan. 24, 2022) (the court denied plaintiff an

opportunity to amend upon finding that "allowing plaintiff to replead as to the *Bivens* claim would be futile."); *see also Marucci*, 751 F.3d at 378 ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."). For these reasons, the Court **denies** Plaintiff's Motion to Amend.

## IV.    Conclusion

The Court **grants** Defendant's Motion for Summary Judgment (Doc. No. 14) because Plaintiff's claims are time-barred and not subject to tolling and, alternatively, Plaintiff's Title VII claims for religious discrimination and constructive discharge were not exhausted in the administrative process as they exceed the scope of her EEO charges. Therefore, Plaintiff's claims against Defendant are hereby **dismissed with prejudice**. The Court **denies** Plaintiff's Motion to Amend (Doc. No. 37) because Plaintiff fails to demonstrate good cause under Rule 16(b) for modifying the expired Scheduling Order deadlines to amend and join parties and, even under the more lenient Rule 15(a) standard, the proposed amendments are futile.

**SO ORDERED.**

Signed April 2nd, 2024.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE